COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Causey and Senior Judge Frank

TRACEY LEE BURNS

MEMORANDUM OPINION*
v.      Record No. 0441-21-3                          PER CURIAM
NOVEMBER 3, 2021

ROANOKE CITY DEPARTMENT
OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Onzlee Ware, Judge

(Lalita Brim-Poindexter; John S. Koehler; The Law Office of James
Steele, PLLC, on briefs), for appellant.

(Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
City Attorney; Diana M. Perkinson, Guardian *ad litem* for the minor
children; Perkinson Law Office, on brief), for appellee.


Tracey Lee Burns (mother) appeals the circuit court's order terminating her parental rights

and approving the foster care goal of adoption for her two children, T.L.O. and G.F.C.O.[1]  Mother

argues that the circuit court erred in finding that the Roanoke City Department of Social Services

(the Department) established by clear and convincing evidence that the termination of mother's

parental rights was the only reasonable and appropriate recourse and the Department did not

establish that mother had violated Code § 16.1-283(B) or (C)(2).  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the circuit court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Charles Overton, the children's biological father, also appealed the termination of his
parental rights to the circuit court.  Overton did not appear for the trial in the circuit court and the
circuit court determined he had proper notice of the hearing, and thus treated his nonappearance
as a withdrawal of his petition under Code § 16.1-106(D).

UNPUBLISHED

BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

The Department first became involved with the family on August 7, 2019 after Roanoke City police called in a report of a child wandering in the front yard of a residence. According to the report, the child was naked and without a caretaker. After a Department investigator responded to the residence, mother and T.L.O. came outside. The outside of the home was in very poor condition, and it was very hard for the investigator to gain access to the home. The yard was fenced-in, and several large tree branches blocked the fence gate. The investigator noted that the area was very dirty and unkempt, and there were lots of toys and other various objects in the yard.

Inside the home there was a "very foul odor." It was hard for the investigator to navigate inside the home because there were various piles of stuff and "almost just enough room to put one foot and step over objects and place the other foot down." There were bugs flying around the home and crawling on the walls, floors, and ceilings. Piles of trash, crumbs, debris, dried feces, and urine were scattered within the home. The pack and play where G.F.C.O. slept was very dirty, and the investigator saw a bug crawling out of G.F.C.O.'s blanket. Mother did not explain why the home was in such a condition.

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

T.L.O. had wet, matted hair, he was not wearing a shirt, and his face was covered in dirt or chocolate.  Mother reported that she had difficulty supervising T.L.O. and keeping him inside the house because he always tried to get out.  G.F.C.O. appeared underweight and had a dull, greyish skin complexion.  The investigator found no suitable relative placement.

The City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered emergency and preliminary removal orders.  The JDR court subsequently adjudicated that both children were abused or neglected and entered dispositional orders.  The initial goal was to return the children back to mother's care or find a relative placement.  For the children to be returned to her care, mother had to comply with current and future services, maintain contact with the Department, complete a behavioral health assessment and comply with recommendations, complete a psychological assessment and parental capacity evaluation, complete a parenting class, maintain enough income to support herself and the children, maintain and clean up housing, attend ongoing visitation, and maintain and demonstrate marked improvement in her mental health.

By August 14, 2019, the condition of the home had improved but still was not fit for children.  The home still smelled like urine and smoke, and there were still bugs, including flies, cockroaches, and gnats inside the home.  The home remained dirty and cluttered.  Part of the floor of the home was sunken, the basement was flooded, and the home contained mold from the basement flooding.  The foster care worker conducted five full walkthroughs of mother's home, but the above issues persisted through May 2020.  Although mother made some improvements, the home was never in a condition where the children could have been safely returned.  Mother did not seem to understand the safety issues with the home until they were brought specifically to her attention.  The Department was concerned about whether mother would be able to continue to keep a home in a good, appropriate condition.

The foster care worker repeatedly recommended that mother find another place to live. Mother's sister, who also lived in the home, refused to participate in meeting the Department to complete a criminal and Department background check for a home study. Mother refused the Department's suggestion to investigate public housing and indicated she wanted to buy her own home, despite not being in a place to afford a loan. Mother moved in with her sister and brother-in-law, who filed a petition for custody. The Department completed a home study but had significant concerns with their physical ability to care for the children. The Department ultimately recommended that their petition for custody be denied.[3]

Mother had trouble appropriately interacting with T.L.O. during visitation because of T.L.O.'s self-abusive behaviors. Mother's parenting style to help with those behaviors was inappropriate. When T.L.O. climbed on a chair or jumped on a table, mother would tell him not to do it or yell at him not to do it, but not physically remove him from the unsafe situation. Mother did not proactively address T.L.O.'s behaviors but would yell, smack his hands, or pull on his arms.

On May 4, 2020, the Department petitioned to terminate mother's parental rights because she had been unwilling or unable to remedy the conditions which required the children to be in foster care and it was not reasonably likely that the conditions that resulted in the neglect or abuse suffered by the children could be substantially corrected or eliminated to allow the children to safely return to mother's care. On May 26, 2020, the JDR court terminated mother's parental rights to both children and approved the foster care goals of adoption. Mother appealed the JDR court's rulings to the circuit court.

---

[3] The circuit court denied this petition for custody, and mother's sister and brother-in-law did not appeal that decision to this Court.

On January 14, 2021, the parties appeared before the circuit court. The Department argued that it had been involved in providing services to mother for almost eight years and the issues of cleanliness and appropriate supervision of her children continued throughout the Department's involvement.

Mother's psychological evaluation for parental capacity indicated that mother was resistant to the evaluation. Mother deflected responsibility for things that had happened with the children and had difficulty accepting feedback. She reported that it was physically difficult for her to do the day-to-day parenting of the children, including keeping the children monitored and maintained. Mother had difficulty with speed of processing, which could affect her parenting when she needed to respond to an immediate event. She had a lifelong history of trauma and emotional dependency, which left her susceptible to unhealthy relationships versus healthy relationships. Although she would benefit from psychological treatment, she was resistant and did not have proper insight into her role and actions that led to the Department's involvement. The evaluation concluded that mother could not parent independently and would need a joint custodian relationship because she refused to accept responsibility for her actions.

At the time of the children's removal, G.F.C.O. was significantly developmentally delayed. G.F.C.O. received occupational therapy and early intervention services, which improved her developmental state, but she still suffered from communication and language deficits. T.L.O. also had significant behavioral, emotional, and developmental concerns. T.L.O. received early intervention services, play therapy, occupational therapy, speech therapy, and medication management for attention deficit hyperactivity disorder (ADHD). All services were helpful to T.L.O. Mother was opposed to T.L.O.'s ADHD medication. Both children did well after coming into care. G.F.C.O. became active, healthy, and bubbly. G.F.C.O. made good

- 5 -

developmental progress with services. T.L.O. underwent many service interventions and progressed well with his behavior and coping mechanisms.

Mother detailed her compliance with the Department's requirements, including that she had stopped smoking marijuana. She testified that she "just want[ed] [her] baby back." Mother acknowledged that she began treatment at Project LINK after an assessment but stopped going because she did not like the program or the other participants. When her parenting coach wanted mother to correct T.L.O.'s screaming behavior at a visitation session, mother testified that she did not want to spend two hours yelling at T.L.O., T.L.O. was having fun and not bothering her, and she did not see a problem with T.L.O.'s behavior. Mother testified that she was cleaning up the property, and she put alarms on the doors, furniture in front of windows, and baby gates to prevent T.L.O. from escaping from the home. Mother testified that she did everything that the Department asked her to complete in the home, but the list kept growing.

The guardian *ad litem* recommended that it was in the children's best interests to be adopted, rather than be placed with relatives. After hearing the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). This appeal followed.

## ANALYSIS

Mother challenges the circuit court's order terminating her parental rights to T.L.O. and G.F.C.O. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty.

Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Under Code § 16.1-283(C)(2), one of the bases for the circuit court's order terminating mother's parental rights, a court is authorized to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Mother argues that the evidence presented did not "clearly and convincingly demonstrate[] that reuniting her with her children was no longer an achievable goal or that she had been unwilling or unable to remedy the issues that led to [the Department] placing the children into foster care." She further claims that "the evidence failed to demonstrate that she received reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to achieve that goal."

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department offered numerous services to mother. Mother admitted that she stopped attending Project LINK because she did not like the program or the

other participants. Mother disagreed with her parenting coach when asked to discipline and correct T.L.O.'s behavior during visitation. Mother only corrected problems in the house as the Department directed but did not attempt to improve the conditions of the home on her own; indeed, she did not appear to understand the issues in the home until they were specifically brought to her attention. The home was never brought to a condition where the children could be safely returned, and the Department had an ongoing concern about whether mother could ever keep the home in a safe enough condition.

Additionally, mother was resistant to her parental capacity evaluation, refused to accept responsibility for the events that caused the children to go into care, and resisted feedback about her parenting. She had difficulty with speed of processing and a lifelong history of trauma and emotional dependency. In addition, she resisted psychological treatment that would have benefited her because she did not have proper insight into her role and how her actions led to the Department's involvement with the children. Mother also claimed that it was physically difficult for her to perform day-to-day parenting skills, including monitoring the children's safety. The evaluation ultimately concluded that mother could not parent independently because she does not accept responsibility for her actions.

The circuit court found that although mother had done everything that was asked of her, she could not do more without substantial help from another person. The circuit court noted that mother would not be able to change the conditions that resulted in the children going into the Department's care and could not do any better. The circuit court stated that mother deflected the significant issues in her case. The circuit court also found that mother's situation was "tantamount to a health hazard, not only for [her] but for the kids especially." The circuit court found that mother loved both of her children but was unable to keep up with T.L.O. by herself, without help. The circuit court found that the children were doing better in foster care. Thus, the

circumstances of this case show that the Department made reasonable and appropriate efforts to reunite mother with her children.

Mother argues that the circuit court should have found that she was not afforded a reasonable amount of time to remedy her life situation. At the time of the circuit court hearing, the children had been in foster care for over sixteen months from August 2019 to January 2021, almost all of G.F.C.O.'s life. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2); therefore, we do not need to reach the question of whether mother's parental rights also should have been terminated under Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.